UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

——————————————————————————

ANGI W.,[1]

                                    Plaintiff,              DECISION AND ORDER

-vs-
                                                           21-CV-0557 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

——————————————————————————

## I. INTRODUCTION

Plaintiff Angi W. ("Claimant") brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Feb. 8, 2022, ECF No. 7; Def.'s Mot., Feb. 11, 2022, ECF No. 8. Claimant maintains that the ALJ erred by failing to weigh the medical opinions pursuant to the appropriate standards, and that neither the ALJ's residual functional capacity determination nor her step 5 finding were supported by substantial evidence. Pl. Mem. of Law, 1, Feb. 8, 2022, ECF No. 7-1. The Commissioner maintains that the ALJ did not commit error, and that her decision was supported by substantial evidence. Def. Mem. of Law, Feb. 11, 2022, ECF No. 8-1.

For the reasons set forth below, Claimant's motion for judgment on the pleadings

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[ECF No. 7] is denied, and the Commissioner's motion [ECF No. 8] is granted. The Clerk of Court is directed to close this case.

## II. BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

A. Claimant's Application

Claimant protectively filed her SSI application in April 2019, and originally alleged a disability onset date of March 27, 2018. Transcript ("Tr."), 187, Sept. 13, 2021, ECF No. 6. Claimant alleged that her ability to work was limited by several impairments, including: spine issues, right hip issues, right shoulder issues, carpal tunnel in both wrists, allergies, and cataracts/glaucoma. Tr. 191. In August 2019, the Commissioner determined that Claimant was not disabled, and did not qualify for SSI benefits. Tr. 99. Claimant requested reconsideration of the decision, and the claim was again denied after an independent review by a state agency physician and disability examiner. Tr. 107–08. Thereafter, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 122.

B. The Hearing before the ALJ

Claimant's request was approved, and Claimant appeared with counsel for a hearing before the ALJ via videoconference on May 8, 2020, and an impartial vocational expert also joined by phone. Tr. 29. At the outset of the hearing, Claimant's counsel stated that although the medical source statement in the record from the Claimant's treating physician opines that claimant can do sedentary work, "when we take into consideration the limitations with the dominant right upper extremity and the occasional ability to grasp,

turn, twist objects as well as the off-task behavior and absences, I do believe that we have a less than sedentary RFC." Tr. 36.

For her part, Claimant testified that she was 46 years of age, had completed high school, and lived with her 16 year old daughter. Tr. 36-37. When asked by the ALJ to identify the main problem that she believed prevented her from working, Claimant responded that she has "a terrible [right] hip . . . [lower] back . . . and [right] shoulder" that cause her daily pain that rates as an 8 on a scale of 0 to 10 even with medication. Tr. 37–8. She stated that because of the pain, she can only sit for about 20 minutes before she has "to standup and move around and then the pain kicks back in" causing her to lay down, but then she can't lay down that long. Tr. 38. Claimant said that she can only stand for twenty minutes to half an hour before she feels uncomfortable, can only walk about a block, and – because of her right shoulder – cannot lift anything over her head. Tr. 38.

With respect to her activities of daily living, Claimant testified that she is able to dial a phone, dress herself, and manipulate buttons and zippers, but "very slowly." Tr. 39. She stated that she does not drive, but is able to take public transportation. Tr. 40. She also said that stress and exerting herself triggers her allergies and breathing problems. Tr. 44. She tried physical therapy approximately six years prior to the hearing, and had an injection in her shoulder a couple of months before the hearing, but neither mode of treatment provided any pain relief. Tr. 40. She takes hydrocodone four times per day, cyclobenzaprine twice per day, and naproxen once per day for pain relief. Tr. 41.

In terms of work history, Claimant had not performed substantial gainful activity since 2012 to 2014, when she worked as a laborer helping to renovate houses for resale. Tr. 51–52. In that position, she had to lift and carry "[p]robably about 50 to 100 pounds a

day." Tr. 52. The impartial VE classified the position as a construction worker II under the Dictionary of Occupational Titles, which ranged from medium to very heavy levels of work depending upon the frequency with which she lifted the 50 to 100 pounds in a given day. Tr. 53.

The ALJ then posed a hypothetical employee to the VE with limitations similar to those of Claimant, and asked whether a significant number of jobs at the sedentary exertion level existed in the national economy which that individual could perform. Tr. 54. The VE testified that there were, and identified such jobs as a charge account clerk, an addresser, and a document preparer. Tr. 55. After further questioning of the VE by Claimant's attorney, the ALJ reduced the estimated number of national jobs as a charge account clerk from 51,378 to 22,494. Tr. 63.

C. The ALJ's Decision

On June 12, 2020, the ALJ issued a written decision denying Claimant's claim for SSI benefits. Tr. 23. At step one of the Commissioner's "five-step, sequential evaluation process,"[2] the ALJ found that Claimant has not engaged in substantial gainful activity

---

[2] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

since her application date of April 11, 2019. Tr. 17. At step two, the ALJ determined that

Claimant has several severe impairments: lumbar disc disease, hip impairment, and

degenerative disease of the right shoulder. Tr. 17. The ALJ also noted that Claimant has

several non-severe impairments: blurry vision, but is status post cataract surgery; 20/40

vision in the right eye with 20/20 vision in the left; history of carpal tunnel surgery; and

mild obstructive lung disease. Tr. 17. At step three, the ALJ gave special consideration to

listing 1.00 ("Musculoskeletal Disorders") of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1, but determined that Claimant does not have an impairment or

combination of impairments that meets or medically equals the severity of any of the

listings in Appendix 1. Tr. 18.

Then, before proceeding to step four, the ALJ carefully considered the entire

record and determined that Claimant had the residual functional capacity[3] ("RFC") to:

> [P]erform sedentary work, as defined in 20 C.F.R. § 416.967(a), with
> occasional bending, occasional stair climbing, and no overhead reaching
> with the right arm. She can frequently reach in front, push and pull at the
> sedentary level of weight, and can handle, finger and feel frequently. She
> has no limits using her left arm and hand. She is restricted from climbing
> ladders and working at heights, and can see large objects, read regular
> print, and read computer screens that have the ability to make print larger.
> She should work indoors with normal indoor air quality but should not work
> in areas with concentrated air irritants, fumes and extremes of heat and
> cold.

Tr. 18.

At step four, the ALJ found that Claimant was unable to perform any past relevant

work. Tr. 22. However, based on Claimant's age, education, work experience, and RFC,

---

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting
despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

and on the testimony of the impartial VE, the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform, such as charge account clerk, addresser, and document preparer. Tr. 23. Hence, the ALJ concluded that Claimant *is not* disabled. Tr. 23.

On March 26, 2021, the Commissioner's Appeals Council denied Claimant's request to review the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

### III. LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)

(internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Yet while "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (quotation marks omitted). Nevertheless, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

IV. DISCUSSION

As indicated above, in the present case Claimant raises three arguments[4] for

---

[4] To be clear, Claimant's brief states only two issues: (1) that the RFC determination is unsupported by substantial evidence, and the ALJ failed to weigh the medical opinions pursuant to the appropriate legal standards; and (2) the ALJ's step 5 finding is unsupported by substantial evidence. Pl. Mem. of Law at 1.

review by the Court. First, Claimant argues that, with respect to the RFC determination, the ALJ failed to weigh the medical opinions pursuant to the appropriate legal standards. Pl. Mem. of Law at 12–27. Second, Claimant argues that the ALJ's RFC was not supported by substantial evidence. *Id.* Finally, Claimant argues that the ALJ's step 5 finding is also not supported by substantial evidence. Pl. Mem. of Law at 27–30.

A. The ALJ's Evaluation of the Opinion Evidence

The ALJ specifically considered four opinions in her decision. First, the ALJ found the opinion of the consultative medical examiner, Dr. Benchoam-Ravid, to be "persuasive" because the exertional limitations she identified – including in Claimant's right shoulder – were based on examinations. Tr. 21. Next, the ALJ found the respective opinions of state agency medical consultants Dr. Baronos and Dr. Miller to be "somewhat persuasive" because the two doctors are familiar with "SSA functionality," although the ALJ also noted that their conclusion that Claimant could frequently reach overhead was not supported by treating records. Tr. 21. Lastly, the ALJ considered two opinions by Claimant's primary care provider, Dr. Anderson. The ALJ found the first opinion, a short letter written in November 2018 stating that Claimant would be unable to work for approximately six months due to pain in her back and right hip, to be unpersuasive because it did not consider Claimant's remaining functionality. Similarly, the ALJ found Dr. Anderson's second opinion, offered in March 2020, to be unpersuasive because "the objective notes and the claimant's description of essentially normal daily activities . . . do not support" the limitations identified. Tr. 22.

---

However, the Court has separated Claimant's first issue into two discussions to reflect the distinction between the argument of legal error and the argument based on a lack of substantial evidence.

In her present motion, Claimant maintains that the ALJ provided only conclusory analyses of these opinions, and failed to properly apply the framework for analysis set forth in 20 C.F.R. § 416.920c(a)–(c). Pl. Mem. of Law at 12–13.

*Legal Principles*

Because the initial SSI claim in the present case was filed after March 27, 2017, the ALJ was required to apply 20 C.F.R. § 416.920c to evaluate the opinion evidence in the record. § 416.920c(c) lists a number of factors the Commissioner must consider when considering the medical opinions in a particular case, including: supportability, consistency, relationship of the source with claimant, length of treatment relationship, examining relationship and frequency of examination, purpose and extent of treatment relationship, the source's specialization, and other factors "that tend to support or contradict a medical opinion . . . ."

As the Second Circuit has noted,

> The [new] regulations explain that when "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings," the "most important factors . . . are supportability . . . and consistency." *Id.* The regulations further require the agency to "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision." *Id*.

*Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (discussing 20 C.F.R. § 404.1520c(b)(2), the provision that applies to Disability Insurance Benefits, rather than Supplemental Security Income).

Under the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks*, 2022 WL 2189293 at *2. However, even if the ALJ commits

9

such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.'" *Loucks*, 2022 WL 2189293 at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

*Application*

In the present case, the ALJ committed procedural error by failing to clearly explain her determination of the persuasiveness of the medical opinion evidence in terms of supportability and consistency. *See* 20 C.F.R. § 416.920c. Nevertheless, a searching review of the record assures the Court that the substance of § 416.920c was not traversed.

To begin with, the ALJ acknowledged the new regulation replacing the "treating physician rule" when she stated that she "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions . . . ." Tr. 21; *see also* § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"). In addition, the ALJ expressly found the consultative ophthalmologist's opinion to be persuasive because it was "consistent with the record."

With respect to the other three opinions, although she did not in every instance use the precise terms "supportability" or "consistency" in her decision, the ALJ's discussion makes clear that she did consider those factors for each opinion. The consideration of "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be."

10

§ 404.1520c(c)(1). The consideration of "consistency" means that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2).

The first opinion the ALJ considered was that of Dr. Raquel Benchoam-Ravid, who gave a medical source statement finding that "[t]he claimant has mild to moderate limitations for activities that require movement of the neck . . . mild limitations for bending, moderate limitations for prolonged walking, standing, sitting, climbing stairs, lifting, and carrying . . . . [and m]oderate limitations for pushing and pulling." Tr. 431. Dr. Benchoam-Ravid also opined that Claimant "has marked limitations for overhead reaching with the right shoulder." Tr. 431. The ALJ stated that she found the "opinion persuasive as it is based on examinations and incorporated those limitations in the residual functional capacity, although cervical limitations are not supported in the record." In other words, the ALJ found that Dr. Benchoam-Ravid's opinion was *supported* by her examination of Claimant, but that the mild to moderate neck restrictions she found were not *consistent* with the remainder of the record. Tr. 21.

Claimant argues that the ALJ's reasoning was too conclusory, and "inconsistent with multiple imaging reports showing degenerative disc disease in the cervical spine." Pl. Mem. of Law at 25 (citing 266, 283, 497, 693). However, two of the four "imaging reports" that Claimant references as "showing degenerative disc disease," are the same report from February 2020, which consisted of an x-ray of Claimant's right shoulder, concluded that there were "[n]o significant degenerative changes," and was actually referenced by the ALJ in her decision. Tr. 20 (ALJ's decision), 497, 693. The other two

image reports were from nearly a decade earlier, 2012 (Tr. 283) and 2014 (Tr. 266), and were not even noted in later exam notes by the same orthopedic practice that took the x-rays. *See, e.g.,* Tr. 238 (discussing a medical history of a "lumbar herniated disc" but no cervical spine issues); see also Tr. 498 (from 2020, "she never had a neck workup"). Further, even Claimant herself seems not to have considered her cervical spine to be a severe problem. When asked by the ALJ at the hearing what prevented her from working, Claimant responded "a terrible [right] hip . . . [lower] back . . . and [right] shoulder . . . ." Tr. 38. With respect to the other limitations Dr. Benchoam-Ravid identified, the ALJ found them persuasive because based on an examination, and incorporated them into her RFC. Tr. 21. Claimant's arguments with respect to the ALJ's treatment of Dr. Benchoam-Ravid's opinion are thus without merit.

Second, the ALJ found the opinions of the state agency medical consultants, Dr. Barnonos and Dr. Miller, to be "somewhat persuasive." Tr. 21. Under the regulations, "[w]hen a State agency medical . . . consultant makes the determination [of disability] together with a State agency disability examiner . . ., he or she will consider the evidence in your case record and make administrative findings about the medical issues . . . ." 20 C.F.R. § 416.913a. Consistent with this non-examining role, Dr. Miller's opinion expressly states that "I have reviewed all the evidence in the file and [Dr. Baronos'] assessment of 8/7/19 is affirmed, as written." The ALJ found these opinions only "somewhat persuasive," however, because the opinions were not consistent with the consultative examiner's assessment of Claimant's limited ability to reach overhead, which the ALJ found to be "supported" by later signs and treatment records. Tr. 21 (citing MRI results and treatment notes at Tr. 497–99).

Claimant takes exception to the ALJ's opinion because "[t]here was no indication that Plaintiff's only limitations resulting from her right shoulder and cervical spine impairments was no reaching overhead, and the ALJ based this finding upon her lay interpretation of the raw medical data within the treatment notes." Pl. Mem. of Law at 16. However, Claimant misconstrues or misunderstands the ALJ's decision: the ALJ did not reference Claimant's inability to reach overhead as supported by the medical consultants' opinion, but rather cited her inability to reach overhead – as reflected in the "marked limitation" identified by the consultative medical examiner, Dr. Benchoam-Ravid – as a reason for finding their opinions only "somewhat persuasive." Tr. 21. That is, the ALJ did not draw the right shoulder limitation from the medical consultants' opinions; she found that the medical consultants' opinions were inadequate, since they did not identify that limitation which had been identified in another medical opinion, the consultative examiner's, which the ALJ found persuasive. Tr. 21. Such reasoning does not reflect a finding based upon the ALJ's lay interpretation of the medical data, and Claimant's argument is without merit. *See, e.g., Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (finding the ALJ's RFC determination was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner.").

Lastly, with respect to the opinion of Plaintiff's treating physician, Dr. Anderson, the ALJ found a short, two-sentence letter Dr. Anderson signed in November 2018, which stated that Claimant was unable to work for six months due to back and right hop pain, to be unpersuasive. Tr. 21 (citing Tr. 864). More significantly, the ALJ considered the medical source statement that Dr. Anderson signed in March 2020, which opined that

Claimant's impairments are likely to produce "good days" and "bad days," and that the "bad days" would likely cause Claimant to be absent from work more than four days per month. Tr. 734. The ALJ found Dr. Anderson's opinion to be "not persuasive" because "the objective notes[5] and the claimant's description of essentially normal daily activities . . . do not support these limits . . . ." Tr. 21–22 (citing Tr. 428–31; Tr. 732–36). In other words, the ALJ found that the opinion was not persuasive because it was not *supported* by Dr. Anderson's own objective notes, and it was not *consistent* with Claimant's report of daily activities to the consultative examiner.

Claimant maintains that "[t]he ALJ's one sentence evaluation of Dr. Anderson's opinion was insufficient to reject the limitations relating to off task, absences, and manipulations." Pl. Mem. of Law at 24 (citing *Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015). Claimant's reliance on *Lesterhuis*, though, is unpersuasive. In that case, the Second Circuit found an ALJ's decision not to be supported by substantial evidence where the claimant's treating physician, whose opinion was entitled to controlling weight under the regulations in effect at that time (*i.e.*, 20 C.F.R. § 404.1527) submitted an uncontroverted medical opinion that the claimant was likely to be absent from work more than four days per month. However, as the Second Circuit has since observed, the regulations governing opinion evidence have changed, and "[t]hese new regulations no longer apply the treating-physician rule . . . ." *Loucks*, 2022 WL 2189293, at *1. Whether or not Claimant agrees with the ALJ's assessment, the ALJ did point to two items that the ALJ believed controverted Dr. Anderson's opinion: Dr. Anderson's own objective notes

---

5  Prior to discussions of the medical opinions in the record, the ALJ had considered the objective evidence, including examinations by Dr. Anderson. The ALJ noted in that context that examinations were primarily concerned with back and hip pain. Tr. 19–20 (citing Tr. 607–11; Tr. 623–25; Tr. 629).

(discussed at Tr. 19–20) and Claimant's statements to the consultative examiner regarding her activities of daily living. "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Accordingly, the Court finds the ALJ's procedural error with respect to the supportability and consistency factors of 20 C.F.R. § 416.920c to be harmless.

B. The Evidence Supporting the ALJ's RFC Determination

As a corollary to her argument that the ALJ applied improper legal standards to evaluate the medical opinions in the record, Claimant also argues that the ALJ failed to support her RFC determination with substantial evidence. Given the purported inadequacy of the ALJ's treatment of the opinion evidence, Claimant maintains that "[t]he ALJ's analysis shows that she substituted her lay interpretation of the raw medical data within the treatment notes to craft the RFC finding instead of relying upon the medical opinions." Pl. Mem. of Law at 12.

*Legal Principles*

The ALJ must assess a claimant's RFC by examining "all of the relevant medical and other evidence" in the case record, and considering the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945. In general, the claimant has the burden to provide the evidence for the ALJ to use to make an RFC determination. *Id.*

Although 20 C.F.R. § 416.946 provides that the determination of a claimant's RFC is an issue reserved to the Commissioner, the Second Circuit has consistently warned ALJs not to "arbitrarily substitute [their] own judgment for competent medical opinion."

15

*Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Still, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (affirming what had originally been held summarily in *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). Further, it is well-settled that it is "within the province of the ALJ to resolve" conflicting findings in the record. *See Veino*, 312 F.3d at 588.

## Application

In the present case, the ALJ's RFC determination is supported by substantial evidence. In summarizing her determination, the ALJ stated that:

> the medical evidence establishes claimant has some limitations but the medical evidence does not support the extreme limits reported by the claimant. She does have some back and hip problems, which supports limiting her to sedentary work, with only occasional bending. She also has degenerative disease in the right shoulder, which supports no overhead reach with the right arm. She has mild obstructive lung disease . . . . However, the claimant's assertion of not being able to grip and grasp is not supported; she has full grip strength. . . . Also some of claimant's activities of daily living support that she can at least perform sedentary work . . . . Further, any pain experienced while sitting can be accommodated by changing positions and standing during customary break periods.

Tr. 21 (internal citations to the record omitted).

The Court finds that these conclusions by the ALJ were supported by substantial record evidence. For instance, the ALJ points out that one of the medical records in evidence from October 2019 indicates that Plaintiff had to go to the emergency room after she sustained a bee sting while painting her porch. Tr. 21 (citing Tr. 457). The ALJ noted that while the ability to paint a porch is not "dispositive," it does provide "some indication

16

of greater activity than the claimant initially alleged." Tr. 21. Additionally, the ALJ cited to Claimant's statements to the consultative medical examiner that she is able to cook seven times a week, clean three times a week, shower and dress herself, socialize with friends, and do laundry and shop once a week (Tr. 430); the consultative medical examiner's assessment of only mild or moderate exertional limitations, except for a marked limitation in overhead reaching with her right shoulder (Tr. 431); Dr. Anderson's medical source statement indicating that Plaintiff is able to stand for 2 hours in an 8-hour workday and sit for 6 hours (Tr. 21 citing Tr. 732); and the opinions of the state agency medical consultants that Claimant is capable of light work (Tr. 79). Further, to the extent that Dr. Anderson's opinion indicated that Claimant was not capable of substantial gainful activity, the ALJ identified inconsistencies in the evidence that did not support the limitations. Tr. 22.

Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence. *See Trepanier*, 752 F. App'x at 78.

C. The Evidence Supporting the ALJ's Step 5 Finding

At the hearing, the VE alerted the ALJ to an update to her resume, and the ALJ added the updated version to the record and, with Claimant's counsel's consent, identified the VE as an expert. Tr. 50–51. The VE's resume indicates that she has a master of science degree in counseling; is a certified rehabilitation counselor; is a member of several career counseling organizations; and has been a professional career counselor in various capacities since 1999. Tr. 233. After qualifying the VE, the ALJ asked her whether a hypothetical individual with limitations consistent with Claimant's RFC, including "no overhead reaching with their right arm, but can reach in front," would be able to do any work in the national economy. Tr. 54. As noted above, the VE cited three jobs

17

listed in the D.O.T.: charge account clerk, addresser, and document preparer. Tr. 55.

The ALJ then specifically asked: "[w]as there anything within the residual functional capacity though that you were given which is not in the DOT . . . that you needed to use your training and experience for?" Tr. 56. The VE responded that the D.O.T. did not address the restrictions that the ALJ stated with respect to the overhead reaching of the right hand, but "just tells . . . in general how much reaching, fingering, and felling [sic]." Tr. 56. She stated that her decisions on what jobs to list for the ALJ were thus "based on [her] experience in this field." Tr. 56.

Claimant's attorney then examined the VE more closely regarding her identification of the charge account clerk as a position in the national economy that an individual with Claimant's RFC could perform. Counsel noted that although the VE identified 51,378 charge account clerk positions in the nation, his software[6] was only showing 1,477. After additional questioning, the VE agreed with counsel that she should not have included jobs in the "professional, scientific, and technical services" classification in her numbers, and therefore reduced her estimate to 22,494 charge account clerk jobs nationally. Tr. 62–63. When counsel challenged her further on other classifications included in her numbers, the VE defended her decision, noting that "individual businesses also have their own charge accounts," and hence the classifications were relevant. Tr. 64. Counsel asked no further questions of the VE, but argued in his closing statement to the ALJ that the VE "manipulated a software to produce an increased number of jobs at step 5." Tr. 64.

In her decision, the ALJ addressed both the conflict between the VE's testimony

---

[6] In defending her decision to use Job Browser Pro by Skilltran, and not updating the version 1.7, the VE reasonably argued that she had decided not to upgrade yet because version 1.7 did not include data from employment agencies, which she indicated is where many sedentary level jobs come from. Tr. 59–60.

and the D.O.T. information, and the VE's numbers for the charge account clerk position. With respect to the conflict, the ALJ acknowledged that the specific information regarding "reaching overhead" is not in the D.O.T., but accepted the VE's opinion as based on her experience and training. Tr. 23. Then, the ALJ stated that she "carefully considered [counsel]'s arguments regarding how the vocational expert determined the job numbers but she provided an explanation and the vocational expert has professional knowledge and experience in job placement." Tr. 23. Accordingly, the ALJ found the VE's job information to be "reliable." Tr. 23.

Claimant now maintains that the ALJ's step 5 finding is unsupported by substantial evidence because the positions of document preparer and addresser "have been found to be obsolete by the Courts," and "the veracity of the VE's testimony is questionable regarding the remaining job numbers" for the position of charge account clerk. Tr. 29. Further, in her reply brief[7] Claimant maintains that the ALJ failed to identify and resolve the conflicts between the VE's testimony and the D.O.T. under the Second Circuit's holding in *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019). Reply, 3–5, Mar. 15, 2022, ECF No. 9.

*Legal Principles*

If the ALJ is not able to find that a claimant is disabled at one of the first three steps of the sequential evaluation process, she must determine at the fourth step whether the claimant can do her past relevant work. 20 C.F.R. § 416.960(a)–(b). If the claimant is

---

[7] It is generally "inappropriate to raise new arguments in a reply brief." *Filer v. Comm'r of Soc. Sec.*, 435 F. Supp.3d 517, 525 (W.D.N.Y. 2020) (citing *Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F. Supp.2d 158, 165 n.6 (N.D.N.Y. 2009)). However, the Court considers Claimant's argument here as an extension of her primary challenge to the ALJ's step 5 finding.

unable to do her past relevant work, then the ALJ must use the claimant's RFC at the fifth step to determine whether the claimant can adjust to any other work that exists in significant numbers in the national economy. § 416.960(c)(1). In order to support a finding that a claimant is not disabled at step five of the sequential evaluation process, the Commissioner has the burden of proving that work exists in significant numbers in the national economy that the claimant can do given her residual functional capacity and vocational factors. § 416.960(c)(2). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b).

> As the Supreme Court recently explained:
>
> For guidance on such questions, ALJs often seek the views of "vocational experts" . . . . Those experts are professionals under contract with SSA to provide impartial testimony in agency proceedings . . . . They must have "expertise" and "current knowledge" of "[w]orking conditions and physical demands of various" jobs; "[k]nowledge of the existence and numbers of [those jobs] in the national economy"; and "[i]nvolvement in or knowledge of placing adult workers[ ] with disabilities[ ] into jobs . . . . Many vocational experts simultaneously work in the private sector locating employment for persons with disabilities . . . . When offering testimony, the experts may invoke not only publicly available sources but also "information obtained directly from employers" and data otherwise developed from their own "experience in job placement or career counseling." *Social Security Ruling*, SSR 00–4p, 65 Fed. Reg. 75760 (2000).

*Biestek*, 139 S. Ct. at 1152–53 (multiple internal citations omitted). A VE's testimony may count as substantial evidence even when unaccompanied by supporting data, provided it has sufficient indicia of reliability. *Id*. at 1155.

In addition to her own expertise, a VE often bases her determinations of jobs in the national economy that are available to a particular claimant on the position descriptions

in the *Dictionary of Occupational Titles* ("DOT"), which is published by the United States Department of Labor. *Brault*, 683 F.3d at 446. The DOT establishes the minimum skill level and physical exertional capacity required to perform thousands of specific jobs in the national economy. *Id.* "Because of the detailed information appended to each DOT code, the codes are useful for determining the type of work a disability applicant can perform." *Id.* Nevertheless, the DOT only *defines* jobs; "[i]t does not report how many such jobs are available in the national economy." *Id.* For that information, a VE must turn to other sources. *See, e.g., McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014)* ("the category of sedentary jobs is large, and the general definition allows of exceptions. Accordingly, '[i]n more complex cases' a vocational expert may be consulted to determine whether there is other work in the national economy that an individual with the ability to do less than the full range of sedentary work may perform") *(citing SSR 96–9p, 61 Fed.Reg. 34478, 34480 (July 2, 1996))*.

The Second Circuit recently adopted the reasoning of the Eleventh Circuit with respect to the Commissioner's duty to identify and resolve apparent conflicts between the D.O.T. and a VE's testimony. *See Lockwood*, 914 F.3d at 93 (discussing *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018)). The Second Circuit held that the Commissioner's duty to reconcile is "not fulfilled simply by taking the [vocational expert] at his word," but rather imposes "an independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [vocational expert] if there is one." *Id.* This is consistent with a 2000 ruling by the Social Security Administration, which instructed its ALJs that before relying on VE evidence to support a disability determination, they must (1) identify and

obtain a reasonable explanation for any conflicts between occupational evidence provided by the VE and information in the Dictionary of Occupational Titles (DOT), and explain in the decision how any conflict that has been identified was resolved. *Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

*Application*

In the present case, the ALJ's step 5 finding that there were significant numbers of jobs in the national economy that Claimant can perform was supported by substantial evidence. Moreover, the ALJ properly identified and resolved potential conflicts in the VE's testimony.

First, although the VE admitted that her initial estimate for the number of charge account clerk jobs available nationally was an overestimate based on the erroneous inclusion of the "professional, scientific, and technical services" classification in her numbers, the reasoning behind the number of jobs that she ultimately identified was sufficiently reliable. In particular, the VE's justification for using her version of Job Browser Pro – because it included data from employment agencies that was omitted from a more recent version – was reasonable. Tr. 60. So, too, was her response to Claimant's counsel's challenge to including other industry classifications in her estimates: that there will be "in a lot of these industries someone who is going to be handling . . . the charge accounts for those businesses" because individual businesses, and not just major credit card companies, have their own charge accounts. Tr. 63–64. This response was supported by the VE's observation in her explanation of the North American Industry

Classification System, that the numbers she uses in her estimates are not derived solely from information collected by the federal government about different jobs found in different industries, but also from industries "reporting the saturations of how [a particular] job is found in that industry, how many employers reported that." Tr. 61. *See, e.g., Poole v. Saul*, 462 F. Supp.3d 137, 165 (D. Conn. 2020) (holding that a vocational expert's testimony provided substantial evidence for an ALJ's finding even though the vocational expert's numbers conflicted with those from counsel's independent research).

Accordingly, the Court finds that the ALJ's step 5 finding that there are significant numbers of charge account clerk jobs in the national economy – 22,494 – that Claimant could perform was supported by substantial evidence. *See, Biestek*, 139 S. Ct. at 1150 (observing that the step 5 substantiality of the evidence inquiry "is case-by-case. It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record, and defers to the presiding ALJ, who has seen the hearing up close.").

Additionally, because the charge account clerk position itself involves a significant number of jobs[8] in the national economy that Claimant can perform, the Court need not consider Claimant's argument that the other two jobs the VE identified – addresser and

---

[8]      Neither the Regulations nor the Social Security Rulings define "significant number." *Koutrakos v. Colvin*, No. 3:13-CV-1290, 2015 WL 1190100, at *20–22 (D. Conn. Mar. 16, 2015). Courts have held that a "significant number" of jobs is "fairly minimal." *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp.3d 223, 229 (N.D.N.Y. 2015) (citing *Rosa v. Colvin*, No. 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. March 27, 2013) ). Courts have held that numbers varying from 9,000 upwards constituted "significant." *See Hoffman v. Asture*, No. 09-CV-5252, 2010 WL 1138340, at *15 (W.D. Wash. Feb. 8, 2010) (9,000 jobs in the national economy was found significant) (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs in the national economy was found significant)).

*Phillips v. Comm'r of Soc. Sec.*, No. 6:17-CV-057 (WBC), 2018 WL 1768273, at *6 (N.D.N.Y. Apr. 11, 2018)

document preparer – were obsolete. As quoted above, 20 C.F.R. § 416.966(b) provides that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." That is, although vocational experts customarily offer three jobs that a claimant perform as part of their testimony, the ALJ does not have a corresponding duty to find that each of the three jobs offer significant numbers of jobs in the national economy: one occupation is sufficient. *See, e.g.*, *Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009) (finding the vocational expert's failure to provide complete information regarding the "inspector/checker position" to be "irrelevant" where the VE provided substantial evidence that there were significant numbers of charge account clerk positions in the national economy). In any event, the Court would be loath to conduct its own analysis of job types and job availability and second guess the vocational expert's conclusions. *See, e.g., Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("We decline Bavaro's invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for her.").

Lastly, the Court finds that the ALJ satisfied her duty to identify and resolve potential conflicts in the VE's testimony under *Lockwood*. In fact, Claimant presented only part of the picture in her reply brief when she acknowledged the ALJ's statement that the VE's testimony was not consistent with the D.O.T. with respect to overhead reaching, which was instead based on the VE's experience. Reply at 3. What Claimant omitted was that not only did the ALJ acknowledge this conflict, but she also stated that she "carefully considered" Claimant's counsel's challenge to the VE's job availability numbers, but was satisfied with the VE's explanation based on her professional knowledge and experience.

24

Tr. 23. Thus, the ALJ did not resolve potential conflicts at Step 5 with "boilerplate language," as Claimant suggests, but rather through an engaged dialogue during the hearing and careful consideration in the decision. Reply at 3. *See Reilly v. Comm'r of Soc. Sec.*, No. 21-8-CV, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022) (affirming an ALJ's step 5 finding where "[t]he ALJ specifically asked about both potential conflicts and the vocational expert provided explanations that included an analysis based on his own expertise and labor market surveys he conducted").

Claimant's arguments regarding the ALJ's step 5 findings are without merit.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Claimant's motion for judgment on the pleadings [ECF No. 7] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 8] is granted. The Clerk is directed to close this case.

DATED:      March 22, 2023
            Rochester, New York


                              CHARLES J. SIRAGUSA
                              United States District Judge